# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RODNEY MABRY,

        Plaintiff,

vs.                                         Case No. 2:06-CV-12076

DR. DANIEL FREEMAN, DR.
ARTURO ANTONINI, DR. UMESH        HON. LAWRENCE P. ZATKOFF
VERMA, DR. ROCCO DeMASI
and Dr. CRAIG HUTCHINSON,
Jointly and Severally,

        Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on June 14, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss (Docket #32). Plaintiff has filed a response and Defendants have since replied. Both parties have provided documents in support of their briefs. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the following reasons, Defendants' Motion to Dismiss will be DENIED.

## II. BACKGROUND

This case arises from Plaintiff's medical treatment while an inmate in a Michigan correctional facility. These facts are drawn from Plaintiff's complaint or construed in the light most favorable to Plaintiff. In April 2002, Plaintiff entered the Carson City Correctional Facility to serve a twenty-year sentence for a conviction of intent to deliver narcotics. At that time, Plaintiff was in good health and had no neurological deficits. However, on March 6, 2003, Plaintiff reported to the Carson City Hospital emergency room after he was found unresponsive in his cell. Later that day, Plaintiff was admitted to Foote Hospital in Jackson, Michigan, where he remained until March 18, 2003. During his hospital stay, Plaintiff was treated for meningoencephalitis[1] and had an abnormal CT-scan of the head.

Upon being released from Foote Hospital, Plaintiff was transferred to Duane L. Waters Hosptial where he continued to receive intravenous treatment. On March 24, 2003, Plaintiff was discharged to the G. Robert Cotton Correctional Facility. On April 22, 2003, Plaintiff reported to the medical clinic at the Cotton Correctional Facility complaining of vertigo, blurred vision, and headaches that he had been experiencing for over one week. Less than two weeks later, Plaintiff returned to the clinic for an examination. At this time, Plaintiff was scheduled to undergo a

---

[1]Meningoencephalitis is a form of encephalitis, an inflammatory disease of the membranes surrounding the brain and spinal cord. NAT'L INST. OF NEUROLOGICAL DISORDERS AND STROKE, *Meningitis and Encephalitis Fact Sheet*, available at http://www.ninds.nih.gov/disorders/encephalitis_meningitis/detail_encephalitis_meningitis.htm, (last modified March 19, 2007). Symptoms include sudden fever, headache, vomiting, heightened sensitivity to light, stiff neck and back, confusion and impairment of judgment, drowsiness, and weak muscles. *Id.* More severe symptoms requiring immediate medical attention include loss of consciousness, seizures, muscle weakness, or sudden severe dementia. *Id.* The prognosis for encephalitis varies from short, mild symptoms, usually lasting one to two weeks, to severe and permanent impairment or death. *Id.*

neurological examination. On June 6, 2003, Defendant Freeman, a neurologist at Duane L. Waters Hospital, examined Plaintiff and recommended that he undergo an MRI of the brain and comprehensive neurological testing.

On June 8, 2003, Plaintiff was still experiencing blurred vision and weakness in his extremities and on June 16, 2003, Plaintiff fell and struck his head on a prison locker when his legs gave out due to weakness. Plaintiff underwent a CT-scan of his head on July 17, 2003, that was abnormal. Despite the abnormal CT-scan, Plaintiff did not receive further neurological testing.

On September 3, 2003, Defendant Antonini noted during an exam that Plaintiff was using a wheelchair due to weakness in his legs and that Plaintiff had experienced a progressive clinical deterioration of his neurological condition. On September 26, 2003, Plaintiff still complained of vision problems and ringing in his ears, and his neurological status continued to deteriorate through October 2003. Again, despite his continued symptoms, Plaintiff did not receive further neurological testing.

Plaintiff was paroled on January 4, 2004, and his parole period ended on January 4, 2006. At the time of his parole Plaintiff was wheelchair dependent due to weakness in all extremities. Plaintiff has since been diagnosed with neurosarcodiosis[2] and lives in Kent County Community

---

[2]Neurosarcoidosis is a severe manifestation of sarcoidosis, a chronic inflammatory disorder that typically occurs in adults between 20 and 40 years of age. NAT'L INST. OF NEUROLOGICAL DISORDERS AND STROKE, *Neurosarcoidosis Information Page*, available at http://www.ninds.nih.gov/disorders/neurosarcoidosis/neurosarcoidosis.htm, (last modified Feb. 14, 2007). Neurosarcoidosis is characterized by inflammation and abnormal cell deposits in any part of the nervous system. *Id.* The disease may affect optic and auditory nerves leading to vision and hearing impairments. *Id.* In addition, neurosarcoidosis can cause headache, seizures, memory loss, hallucinations, irritability, and changes in mood or behavior. *Id.* Because the disease manifests in many different ways, a diagnosis may be difficult and delayed. *Id.* Approximately two-thirds of those with the condition will recover completely; the remainder will have a chronically progressing course of illness. *Id.*

Rehabilitation Center.

Plaintiff filed the present action on May 5, 2006, pursuant to 42 U.S.C. § 1983 alleging that his medical treatment while incarcerated was inadequate. While he was incarcerated, Plaintiff did not file any grievances with prison officials or seek any administrative remedies. Defendants now move to dismiss Plaintiff's complaint based on FED. R. CIV. P. 12(b)(6) and 42 U.S.C. § 1997e(a) because Plaintiff failed to exhaust his administrative remedies while incarcerated.

### III. LEGAL STANDARD

A motion brought pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of Plaintiff's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiff's favor. *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577-78 (6th Cir. 1992). The Court may properly grant a motion to dismiss when no set of facts exists that would allow Plaintiff to recover. *Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993).

### IV. ANALYSIS

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), requires an inmate to properly exhaust available administrative remedies prior to bringing suit in federal court regarding prison conditions. The issue in the present case is whether the PLRA's exhaustion requirement applies to a former prisoner whose claim arose while he was incarcerated but who did not file a complaint until after he was released from prison.[3] The Court finds that it does not.

---

[3] Defendants also move to dismiss Count II of Plaintiff's complaint, which alleges a violation of Michigan law. However, the Court previously dismissed this Count in its Order Dismissing Plaintiff's State Law Claims dated May 18, 2006. *See* Docket # 2.

4

Section 1997e(a) of Title 42 of the Untied States Code states that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a *prisoner confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Furthermore, the PLRA defines "prisoner" as "any person *incarcerated or detained* in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h) (emphasis added). Therefore, the PLRA clearly and unambiguously limits the application of the exhaustion requirements to plaintiffs who are confined, incarcerated or detained in prison for criminal violations at the time suit is filed. As Plaintiff in this case was not a prisoner within the meaning of the PLRA when he filed his complaint, the exhaustion requirement does not apply to his case.

While the Sixth Circuit has not specifically decided this issue, every federal court of appeals that has addressed this issue has held that the PLRA's exhaustion requirement does not apply to suits brought by former inmates. *See Michau v. Charleston County*, 434 F.3d 725, 727 (4th Cir. 2006) (holding that the PLRA's exhaustion requirement does not apply to a plaintiff who is not a prisoner as defined in the Act when the suit is filed); *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (same); *Norton v. City of Marietta*, 432 F.3d 1145, 1150 (10th Cir. 2005) (finding that a former inmate does not have to satisfy the PLRA's exhaustion requirement before bringing suit); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) (same); *Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000) (same); *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) (same); *Harris v. Garner*, 216 F.3d 970, 979-80 (11th Cir. 2000) (determining PLRA not applicable to complaints filed by

5

former prisoners for complaints regarding prison conditions prior to release); *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) (holding that "litigants ... who file prison condition actions after release from confinement are no longer prisoners for purposes of § 1997e(a) and, therefore, need not satisfy the exhaustion requirements of this provision"); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998) (finding person who has been released from prison is not a prisoner under the PLRA). Based on the clear weight of authority, the Court finds Defendants' cases to the contrary unpersuasive.[4]

Moreover, distinguishing between current and former prisoners is consistent with the purposes of the PLRA. Congress passed the PLRA to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case" and thereby "reduc[ing] the quantity and improv[ing] the quality of prisoner suits." *Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002)) (internal quotation marks omitted). "Congress deemed prisoners to be pestiferous litigants." *Kerr*, 138 F.3d at 323. Filing lawsuits while in prison "has become a recreational activity for long-term residents of our prisons, because prisoners have little to lose and everything to gain, and because filing frivolous complaints is a means of gaining a short sabbatical in the nearest Federal courthouse." *Greig*, 169 F.3d at 167 (quoting 141 Cong. Rec. S7524-26 (daily ed. May 25, 1995) (statements by Senators Dole and Kyl)) (internal quotation marks omitted). However, former prisoners must expend valuable time and money to file suits and, consequently, do not need the same disincentive to filing

---

[4]In addition to cases finding that the PLRA's exhaustion requirement applies to former inmates, Defendants rely heavily on the recent Supreme Court decisions in *Jones v. Bock*, 127 S. Ct. 910 (2007), and *Woodford v. Ngo*, 126 S. Ct. 2387 (2006). While *Jones* and *Woodford* mandate that inmates must properly exhaust available administrative remedies prior to filing a lawsuit in federal court, they do not address whether the exhaustion requirement applies to former inmates. Consequently, neither *Jones* nor *Woodford* controls the outcome of this case.

6

frivolous lawsuits as current prisoners. *See Kerr*, 138 F.3d at 323. Moreover, a finding that exhaustion does not apply to former prisoners does not hinder the PLRA's goals of giving prison officials the first opportunity to address complaints and improving the quality of prisoner suits because former prisoners "are no longer members of the community that such administrative processes and limitations are meant to serve." *Smith v. Franklin County*, 227 F. Supp. 2d 667, 676 (E.D. Ky. 2002). Based on the clear weight of authority and the purposes of the PLRA, the Court concludes that the PLRA's exhaustion requirement does not bar Plaintiff's suit in this case.

## V.  CONCLUSION

The provision of the PLRA requiring proper exhaustion of administrative remedies prior to bringing a suit in federal court only applies to prisoners as defined in the Act. Since Plaintiff was not a prisoner at the time he commenced the present suit, the PLRA's exhaustion requirement does not apply. Therefore, Defendants' Motion to Dismiss based on Plaintiff's failure to exhaust administrative remedies must be DENIED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  June 14, 2007

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 14, 2007.

s/Marie E. Verlinde
Case Manager

(810) 984-3290